HOLT, GUARD., *v*. RICE, ADM'R.

A party who has received a legacy under a will cannot be permitted to contest the validity of such will, without repaying the amount of the legacy, or bringing the money into court. The doctrine of *Hamblett* v. *Hamblett*, 6 N. H. 333, affirmed.

APPEAL from a decree of the probate court, allowing the will of Daniel Blanchard, Sr., late of Franklin, deceased. The facts, so far as material, are as follows:

Daniel Blanchard, late of Franklin, in this state, died previous to Oct. 12, 1866, testate, and the appellee, who is a resident of Lowell, Mass., was appointed administrator of his estate, with the will annexed. He bequeathed to his son, Daniel Blanchard, Jr., of Lowell, who was under the guardianship of John Holt, the sum of $300, and the same amount to his daughter Janette, of said Lowell. What provision was made for the other heirs does not appear. Holt, the guardian, appealed from the probate of the will to this court, and issues were framed and sent to the trial term. After the appeal was entered, Daniel Blanchard, Jr., died at Lowell, in March, 1871, leaving no estate except his distributive share in his father's estate, provided the will should be set aside; otherwise said legacy of $300. For some years previous to his decease he had been supported at the house of his guardian, whose wife was his sister, without compensation. Upon the death of his ward, Holt made application to the judge of probate for Middlesex county to be appointed administrator of his estate, and George Stevens, Esq., of Lowell, an attorney at law, acted as his counsel in that matter. The application of Holt was opposed by John Blanchard, of California, and by Mrs. Rice, wife of Edward C. Rice, brother and sister of Daniel, Jr., and Charles F. Howe, Esq., of Lowell, an attorney at law, acted as their counsel. By the suggestion of the judge, the controversy was terminated by the appointment of Howe and Stevens as joint administrators, a short time prior to June 9, 1871. This arrangement was consented to, upon condition that the appeal from the probate of the will of Daniel Blanchard, Sr., taken by Holt as guardian of Daniel, Jr., and then pending in this court, should be prosecuted as Holt should wish, and that Howe and Stevens should in no way impede its prosecution. And Howe and Stevens, June 9, 1871, authorized, in writing, Austin F. Pike, Esq., counsel for Holt, to prosecute the appeal, using their names for that purpose if necessary. They filed a bond in the sum of $500 to prosecute the appeal, and pay such costs as Rice should recover against them, and Holt indemnified them against loss upon the bond.

October 12, 1866, George Stevens, who had been appointed administrator of the estate of Janette Blanchard, then deceased, received from the appellee, Rice, the legacy of $300 bequeathed to her by her father, Daniel Blanchard, Sr., and gave to him the following receipt: "Received of Edward C. Rice three hundred dollars, being the amount due Janette Blanchard as a legatee under the will of Daniel Blanchard, late of Franklin, N. H., deceased, testate, not hereby waiving any further or different claims which the estate of said Janette may have against the estate of said Daniel Blanchard in case the will of said Daniel should be set aside, or the estate of said Daniel be settled in any other way, and not waiving any rights to appeal from the probate of said will, but only to account for said $300 on the final settlement of the estate of said Daniel. Lowell, Oct. 12, 1866. Geo. Stevens, administrator of estate of Janette Blanchard."

After the appointment of Howe and Stevens as administrators of

Daniel, Jr., and some months prior to November, 1871, Rice notified Howe that he had a legacy in his hands bequeathed by Daniel, Sen., to Daniel, Jr., and that he would pay the same over to him and Stevens whenever they would give him a receipt therefor; and Howe communicated this to Stevens. The same was paid over to Howe, November 8, 1871. At the time it was paid there was nothing said about its being received in full, or about its being received without prejudice to the right of Holt or Howe and Stevens to prosecute the appeal, or as to what effect it would have upon the suit or the will, or whether it would have any. Rice testifies that, at the time of the payment, there was no understanding or agreement on his part that the money was paid by him or received by Howe and Stevens, without prejudice to the rights of any one to prosecute the appeal; that the appeal had been previously spoken of between him and Howe as a suit pending; that the receipt was written by Howe or Stevens, and signed by them before the money was paid; that he had been previously instructed by counsel to pay the money to any party authorized to receive it, and giving a receipt therefor; that he should not have paid the legacy if any condition had been exacted; that he understood their receiving said legacy would operate as an acceptance of the will and as a discontinuance of the suit; that he paid over the legacy and took the receipt with that understanding, and that he had frequently told Howe that the allowance made to the widow of Daniel, Sen., and the costs and expenses of administration, with the claims that had been presented, if allowed, would absorb the whole estate.

Howe testifies that the sum of $300 was not received in settlement of the suit; that there was no understanding between Rice and himself that it should be received for any such purpose; that it was received as a part of the estate of Daniel, Jr., and caused to be appraised as such; that whether or not receiving it would have any effect upon the suit was not taken into consideration; that he did not know that it was understood by any one that it would affect the suit; that his attention was called to the matter about December 7, 1871, by Stevens, who told him the receipt was being used for the purpose of terminating the suit; that on that day they both signed a paper that they had received said sum as part of said Daniel's share in his father's estate, and that they held it subject to the decision of the court upon said will, and that they did not intend to affirm the will nor waive any rights, etc., but for what purpose said paper was signed, or what use was made of it, does not appear; that subsequent to December 7, 1871, he called on Rice and asked him in effect to take the money back, and offered to return it; that Rice declined, stating that he considered the matter settled; that the receipt was written by him; that Rice did not obtain either of the signatures to the receipt, and did not see it before it was signed; that he (Howe) carried it to Stevens's office where Stevens signed it; that at the time of payment there was no agreement or understanding except that Rice should pay the amount of the legacy ($300), and they should receipt to him therefor.

Stevens testified that he signed the receipt with the intent and understanding that it was to have no effect upon the will or suit, and that he would not have signed the receipt if he had understood otherwise; that he had no conversation with Rice about the legacy or its payment till after the payment had been made; that he was surprised when he learned the receipt was being used to discontinue the appeal; that he thereupon advised Howe to return the money; that he was busy at the time he signed the receipt, and relied upon Howe to see that the form was correct; that nothing was said about the form of the receipt; that he gathered his understanding of the purpose for which the money was paid over from conversation with Howe; and that if he had supposed the receipt was intended to be used for the purpose of procuring a discontinuance of the suit, he should have guarded against it by inserting words to that effect.

The receipt is as follows: "Lowell, November 8th, 1871. Received of Edward C. Rice, administrator with the will annexed of the estate of Daniel Blanchard, late of Franklin, N. H., deceased, three hundred dollars, being the amount of a legacy bequeathed to Daniel Blanchard by said deceased.

(Signed)          CHAS. F. HOWE, } Adm'rs of the estate of
                  GEO. STEVENS, }     Daniel Blanchard."

At the October trial term, 1872, the appellee moved to dismiss said appeal, because Howe and Stevens, administrators of Daniel Blanchard, Jr., had received from Rice, the administrator of Daniel Blanchard, Sen., said legacy of $300. Evidence bearing upon this motion was taken by both sides, in the form of depositions, the material portions of which are embodied in the foregoing statement. At the April term, 1873, Howe and Stevens offered and moved for leave to bring into court the amount of the legacy received by them, in order that it might be refunded to the appellee. The questions thus raised upon both motions were transferred for the consideration of the whole court.

*Pike & Blodgett*, for the appellants, cited 2 Redf. on Wills 748; *Hamblett* v. *Hamblett*, 6 N. H. 333; 2 Story's Eq. Jur., sec. 1098.

*Barnard*, for the appellee, cited 2 Redf. on Wills 737; *Hyde* v. *Baldwin*, 17 Pick. 308; *Hapgood* v. *Houghton*, 22 Pick. 483; *Smith* v. *Smith*, 14 Gray 532; *Hamblett* v. *Hamblett*, 6 N. H. 333; *Claggett* v. *Richards*, 45 N. H. 363; 1 Story's Eq. Jur., secs. 111–139; *Haven* v. *Foster*, 9 Pick. 112; *Ladd* v. *Kenney*, 2 N. H. 340; *Waters* v. *Travis*, 9 Johns. 464; *Lawrence* v. *Ocean Ins. Co.*, 11 Johns. 241; Co. Litt. 145; *Reed* v. *Dickerman*, 12 Pick. 146.

ISAAC W. SMITH, J. In considering and disposing of this case, this court is sitting as the supreme court of probate; and the question is, whether the legal representatives of the legatee have precluded themselves absolutely by their act in receiving the legacy bequeathed to their intestate from further contesting the execution of the will.

The doctrine, as applied by courts of equity in settling the rights of parties under the will after the same has been fully admitted to probate, with respect to the property to which the will applies, is well settled and familiar. It is, that one who has taken a beneficial interest under a will is thereby held to have confirmed and ratified every other part of the will, so that he will not be permitted to set up any right or claim of his own, however legal and well founded it may otherwise have been, which would defeat or in any way prevent the full operation of the will. Big. on Est. 578; 2 Redf. on Wills, ch. 14, sec. vi. The cases cited by Mr. Bigelow and also by Judge Redfield to the above proposition are all cases where the application of the will to the thing devised or bequeathed, and the rights of parties under it, was in question. To the same point are *Hyde* v. *Baldwin*, 17 Pick. 308, *Hapgood* v. *Houghton*, 22 Pick. 483, *Smith* v. *Smith*, 14 Gray 532, cited in the appellee's brief. In no one of those cases is the effect of recovering a legacy while proceedings upon the probate of a will are pending, considered. They all relate to the doctrine of election. They all come to this,—that a legatee or devisee shall not be permitted to set up a claim inconsistent with or repugnant to the provision made for him in the will, and at the same time avail himself of the benefit which the testator undertook to confer by the will. The questions have arisen, not in courts of probate, but in courts of equity or courts of law, where there was no controversy as to the probate of the will.

The precise question before us seems hardly to have been touched by any American court. In the English practice the point occurs under the head of those entitled to cite the executor to prove the will *per testes*, or in solemn form, which exact form of proceeding is not found in most of the American states, although it is found in this state, and in Virginia, Tennessee, and perhaps some other states. The authorities in those jurisdictions, where both forms of proof may be resorted to, are fully in point to show that one who has received a legacy under the proof in common form, may, by paying the amount received on his legacy into court, cite the executor to make proof in solemn form.

In *Hamblett* v. *Hamblett*, 6 N. H. 333, PARKER, J., certainly recognizes in the most unequivocal manner the doctrine that a legatee who has received a bequest under a will, by restoring to the executor what he has received, may afterwards contest the validity of the will. He says (p. 337),—" It has been repeatedly held in the English ecclesiastical courts, that a legatee who has received a legacy by virtue of a will, must bring in the legacy before being permitted to contest the will. The will is founded in principles of justice, and seems to be sound law. The receipt of a legacy is, *quoad* the legatee, an affirmance of the will. It is acting under it, taking the benefit of it, and treating it as a valid instrument. Such affirmance, however, is not an absolute bar against the party seeking to contest the will, though under circumstances of delay, connected with other circumstances, it has been held to preclude the party from contesting the will afterwards. 1 Addams 375; 2 Phillemore 230, note b; *Hoffman* v. *Norris*.

" But if the party so having received a legacy afterwards desires to contest the will, there is great reason that he should tender to the executor, or bring into court, the amount received.   The security of the executor may require this, and if the party can withhold it, he may at one and the same time treat the will as valid and invalid ;—valid, as authorizing him to hold that portion of the estate to which he would be entitled under it, at the same time he is alleging that, from the insanity of the testator, or some other cause, it is wholly void and inoperative.

" In ordinary cases, therefore, when a party seeks to repudiate a will as insufficient, he must do so wholly and entirely by refusing, until it has been established, to receive the benefit of it ; or, if anything has been received, by returning it to the executor, or placing it in the custody of the court, that the executor may have it in case the judgment should be against the validity of the will."   *Bell* v. *Armstrong*, 1 Addams, 365, and *Braham* v. *Burchell*, 3 Addams 243, are cited to this doctrine. `

The doctrine is stated in 1 Jar. on Wills, 2d Am. ed., 214, as follows : " A party who has received a legacy under a will, cannot be permitted to contest the validity of such will without repaying the amount of the legacy, or bringing the money into court ; and the rule applies even if the party was a minor when the legacy was received "—citing *Hamblett* v. *Hamblett*, and the English cases there referred to.

In *Bell* v. *Armstrong* (decided in 1822) the precise question was distinctly raised, and decided in favor of the right of the legatee to restore what he had received, and contest the will.   Sir JOHN NICHOLL in that case says,—"Much is insisted in the protest on the brother's *acquiescence* in the executor's taking probate of the will.   Now, without at all adverting to the grounds upon which that acquiescence is said to have been founded, I may observe, that a *mere* acquiescence (that is, an acquiescence accounted for by no special circumstances) on the part of the next of kin, to an executor's taking probate, is no bar whatever to his calling it in, and putting the executor on proof of the will.   If it were, no probate could be called in by a next of kin, unless immediately upon its becoming known to him that probate had been taken— the very contrary of which is matter of every day's experience.

" Nor, again, is acquiescence a bar, even though accompanied, as in this case, by a receipt of a legacy under the very will sought to be controverted.   This has been determined in a great variety of cases. For instance, in that of *Core* and *Spencer*, which occurred here in 1796, where Spencer, the executor, was cited to bring in the probate of a will taken in 1788, eight years before, at the suit of Core, whose mother had received an annuity under that will for five of the eight years, and she, Core herself, her mother dying at the end of the fifth year, for the remaining three.   Spencer, in that case, appeared under protest, as the executor has in this, and contended that Core was barred from putting him on proof of the will ; but the court thought otherwise, and overruled the protest.   That, however, was an infinitely

stronger case to build this argument upon than the present, if mere acquiescence and receipt of a legacy could bar. In the judgment delivered by my predecessor (Sir WILLIAM WYNNE) in the case of *Core* and *Spencer*, he adverted to various cases—*Pyefinch* v. *Palmore*, formerly Pyefinch, Prerog. 1767, *Ashby* v. *Hay* and Thrale, Prerog. 1768, *Legge and others* v. *Brookman*, formerly Cowdery, Prerog. 1777—all authorities to the same point. At the same time it was held in every one of these (and indeed they were *principally* cited in that case of *Core* and *Spencer*, for the purpose of showing) that the legatee must *bring in* his legacy before being permitted to contest the will,—under the authority of which I hold that I am bound, in overruling this protest, to direct the legacy to be brought in before the brother proceeds. The bringing in of his legacy will be a test of the sincerity of his opposition to the validity of the will, and will prove it to be not merely vexatious. At the same time it will be security to the executor, in case of the next of kin being condemned in costs."

The same doctrine was also held and applied by the same great judge in *Braham* v. *Burchell*, 3 Add. 243, decided in 1826.

In the case before us, the probate of the will was contested by the guardian of the legatee, and while the proceedings were pending in this court on appeal from a decree of the judge of probate, the legatee having died, his administrators received the legacy of their intestate from the executor of his father's will. We think this circumstance alone is not sufficient to bar the further prosecution of this appeal. The administrators might compromise and adjust the controversy as to the validity of the will. If they did so, that would of course be an end of this appeal. Receiving the legacy is doubtless evidence of an intention to affirm the will, and so of an intention to abandon proceedings in which its validity is questioned. But the administrators here both say the effect of receiving the legacy upon this appeal was not in their minds; that they did not understand they were thereby precluding themselves from further contesting the validity of the will, one of them saying he signed the receipt with the understanding that it was not to have any effect on the suit; and it is conceded by all that the effect of receiving the money was not mentioned at the time it was paid, although the executor understood in his own mind that it would constitute a bar to the further prosecution of the appeal. There has been no great delay, and there is no other circumstance, unless it be that the administrators were lawyers, to take this case out of the rule, as it is understood to be settled by the cases referred to.

We think the question in this case really is, whether there was, in fact, a mutual understanding that the appeal should be no further prosecuted at the time the legacy was paid and received. The fact that the administrators were lawyers, doubtless has a bearing upon the question of how they understood it. The act was beyond question inconsistent with a denial of the validity of the will; and a lawyer probably ought to have so understood it, at least better than one less accustomed to matters of that sort. But they say they did not so

understand it, and we think the evidence is, upon the whole, insufficient to show affirmatively that there was an agreement of minds between the parties that the appeal should not be further prosecuted. That being so, they should be allowed to repay the money to the executor, or pay the same into court; and thereupon the proceeding to test the validity of the will should be permitted to proceed.

*Appellant's motion granted.*